## CONYERS vs. GRAHAM & FOUTE.

81  615
115  214

1. The verdict is clearly contrary to the evidence.
2. The evidence of plaintiffs as to the services performed by them, and of defendant tending to show that plaintiffs had not fully performed their duties, was illegal and irrelevant, a full and final settlement as to such services having been made between the parties before this suit was brought.
3. It was error to charge the jury, under the facts of this case, as to the confidential relations between the parties, and as to fraud actual and constructive.
4. It is the trial by twelve jurors which the constitution, art. 6, sec. 18, par. 1, declares shall remain inviolate, so far as relates to. the superior and city courts; and an act creating a city court, which allowed a panel of eighteen jurors from which the parties were to strike until a jury of twelve was selected from such panel to try the case, in civil causes, is not unconstitutional.. There is no limitation to the power of the legislature to prescribe how the twelve jurors shall be selected, nor as to the number of strikes that each party is entitled to.
(a) There is no general law prescribing that the number of jurors to be drawn in the city courts shall be the same as in the superior courts; hence the special act referred to, authorizing a panel of eighteen only, is not in conflict with any general law.
(b) The act of December 17, 1879, is not a general act, as it applies only to city courts whose jurisdiction does not extend beyond the limits of the cities where such courts are held.

December 10, 1888.

Verdict. Evidence. Charge of court. Jury and jurors. Constitutional law. Before THOMAS W. MILNER, Esq., judge pro hac vice. City court of Cartersville. March term, 1888.

Reported in the decision.

R. J. McCAMY and J. B. CONYERS, *in propria persona*, for plaintiff in error.

E. D. GRAHAM and A. M. FOUTE, *in propriis personis, contra.*

SIMMONS, Justice.

Graham & Foute sued Conyers in the city court of Bartow county for $174.50, which, they alleged, he had received for their use, from certain heirs of Z. Felton, deceased, for services of the plaintiffs as attorneys at law in behalf of said heirs in certain cases against Sumner *et al.;* the contract of Conyers being to pay the plaintiffs half of the fees received by him, and he having received $859.90, and the plaintiffs only $510.75 and interest from July 5th, 1883. The defendant pleaded the general issue and payment. In his plea he alleged, in substance, that he employed Graham & Foute to assist him in the prosecution of a claim, and agreed to pay them half of his fee, and that his fee, by the contract with his clients, was one-sixth of the recovery ; that after the money was collected, he did pay the plaintiffs half of the amount, as agreed, to wit, $510.75, for which they gave him a receipt, stating that the same was in full payment for all their services rendered in said case; and that the plaintiffs, at the time of their employment, knew that he was to receive a conditional fee of one-sixth of the recovery, of which he was to pay them half.

When the case came on for trial, the defendant entered a written demand for trial by a jury, and demanded a panel of twenty-four competent jurymen from which to select a jury to try the case. This demand, so far as it called for twenty-four jurors, was refused by the court,

on the ground that the law creating the city court provided only a panel of eighteen from which to strike a jury.  On the trial of the case, a verdict was returned by the jury in favor of the plaintiffs.  The defendant made a motion for a new trial, which was overruled by by the court, and he excepted.

1. Among the grounds of the motion was the ground that the verdict was contrary to law and to the evidence. We think the court erred in refusing to grant a new trial upon this ground.  The main question in controversy in this case was, as to the amount of the fee which Conyers had agreed to receive from the heirs of Felton.  On this point, the testimony, as disclosed by the record, is overwhelmingly to the effect that the fee which Conyers agreed to receive in the event of a recovery was one-sixth of the amount recovered, out of which he agreed to pay Graham & Foute one-half. Conyers testifies to this positively, and there is no evidence in the record going to contradict or even throw a doubt upon it.  It is true that in the receipt which he gave to the administrator, more than this is receipted for ; but he explains this receipt by showing that after the money was collected for his clients, and the cases finally settled, he wrote to his clients, detailing to them the amount of extra work he had done in the case and the extra services he had performed, and that they agreed in writing that the administrator should pay him the excess shown by his receipt.   The testimony of Graham & Foute and of Conyers does not conflict as to the fact that, when the settlement was made between them and the recept of Graham & Foute was given to Conyers, it was the full understanding of the parties that the contract fee which Conyers had agreed to take from his clients was one-sixth of the amount recovered. While the record discloses that Graham thought they

ought to have more, it also discloses the fact that Conyers told him and Foute that he would write to the heirs and ascertain if they were willing to pay more, and that if Graham & Foute would wait until he could hear from the heirs, they should share in such extra amount as they might agree to pay. Graham & Foute refused to wait and insisted upon a settlement, and a settlement was accordingly made upon the basis of one-sixth of the recovery, Graham & Foute giving, as already stated, a full and final receipt to Conyers for their half of that amount. It appears that Conyers, after this settlement, did write to his clients, and that they did agree to pay him an additional amount, and it is for half of this additional amount that the present suit is brought.

We think that if the original fee which Conyers was to receive from his clients was one-sixth of the recovery, and if Conyers, when Graham & Foute expressed dissatisfaction with this amount, proposed to them to wait until he could write to his clients and ascertain if they would be willing to give an additional amount, and they refused to wait but insisted upon a settlement on the basis of one-sixth of the recovery, and gave their full and final receipt for the amount due them upon this basis, they were not entitled to share in the extra amount which the heirs subsequently agreed to pay Conyers. As before stated, Conyers testified positively to this state of facts, and Graham & Foute admit that this is what occurred in the settlement between them and Conyers. We think, therefore, that the jury found contrary to the evidence when they returned the verdict against Conyers for half of the extra amount allowed him by his clients; and the court should have granted him a new trial.

2. There was a great deal of evidence introduced by the

plaintiffs showing the services performed by them, and a great deal introduced by the defendant tending to show that the plaintiffs had not fully performed their duty; which we think was illegal and irrelevant, and threw no light upon the case, a full and final settlement having been made between these parties.

3. We think the court erred in charging the jury in regard to the confidential relations between the parties, and as to fraud actual and constructive, as set out in the 1st, 2d and 3d grounds of the amended motion for a new trial.

4. There was no error in refusing to allow the defendant a panel of twenty-four jurors on his demand therefor. The act creating the city court of Bartow county only allowed a panel of eighteen jurors for the trial of a civil case. It was argued before us that this part of the act is unconstitutional, because it does not allow a panel of twenty-four, from which each side would be entitled to six strikes; and in support of this proposition, the plaintiff in error relies upon article VI, section 18, paragraph 1, of the constitution, (code, §5174,) which declares, that "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate, but the General Assembly may prescribe any number, not less than five, to constitute a trial or traverse jury in courts other than the superior and city courts." We do not agree with him in this contention. This section of the constitution provides, in effect, that the trial by jury shall remain inviolate in the city and superior courts. A jury in these courts is composed of twelve men. It is the trial by twelve jurors which the constitution declares shall remain inviolate; but the constitution does not prescribe the mode or manner in which these twelve jurors shall be selected, nor the number

of strikes that each party is entitled to.  If the act provides for a trial by a jury of twelve, that is sufficient.  There is no limitation to the power of the legislature to prescribe how the twelve shall be selected The legislature may increase or may decrease, it it sees proper, the panel from which the twelve are to be selected, or the number of strikes allowed to the plaintiff and the defendant; and so long as a jury of twelve remains for the trial of the case after the strikes of the parties, it is sufficient under the constitution.  There is no general act of the legislature prescribing that the number of jurors to be drawn in the city courts shall be the same as in the superior courts, and hence the special act creating the city court of Bartow and authorizing a panel of eighteen only, is not in conflict with any general law, as contended by counsel for the plaintiff in error.  The act approved December 17th, 1878, is not a general act, as it applies only to city courts whose jurisdiction does not extend beyond the limits of the city where such court is held.

Judgment reversed.